IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

L.T.O.,1

                    Plaintiff,

Vs.                                                                       No. 20-1366-SAC

KILOLO KRJAKAZI,
Acting Commissioner of Social Security2,

                    Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant L.T.O.'s Title II application for disability insurance benefits and supplemental security income. The time for filing a reply brief has expired, so the matter is ripe for ruling. The court hereby

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The Supreme Court recently

---

1 The use of initials is to preserve privacy interests.
2 On July 9, 2021, Kilolo Krjakazi was named acting Commissioner of Social Security replacing Andrew M. Saul.

1

summarized the relevant holdings behind this standard:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g., Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestak v. Berryhill*, ---U.S.---, 139 S.Ct. 1148, 1154 (2019). In using this standard, a court examines the whole record, including whatever in the record fairly detracts from the weight of the Commissioner's decision, and decides whether substantial evidence supports the decision. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). A court, however, may not reverse the Commissioner's choice between two reasonable but conflicting views, even if the court would have chosen differently assuming a *de novo* review. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The court reviews "only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

**ALJ's DECISION**

The ALJ employed the following five-step sequential evaluation

process (20 C.F.R. § 404.1520) for determining a disability application. ECF# 14, p. 18. First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ at step four determines the claimant's residual functional capacity ("RFC") and then decides whether the claimant has the RFC to perform the requirements of his or her past relevant work. The last step has the ALJ determine whether the claimant is able to do any other work considering his or her RFC, age, education and work experience. For steps one through four, the burden rests with the claimant to prove a disability that prevents performance of past relevant work, but the burden shifts to the Commissioner at step five. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).

      In her decision, the ALJ found for step one that the "claimant has not engaged in substantial gainful activity since July 24, 2019, the application date."." ECF# 14, p. 20. For step two, the ALJ found the claimant's severe impairments were "left ankle degenerative joint disease

(DJD) and interior impingement syndrome status post reconstruction lateral ankle and subtalar fusion, right shoulder arthroscopic biceps tenodesis, seizure disorder (non-epileptic in nature), migraine headaches and fibromyalgia." *Id*. At step three, the ALJ found that the "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* at 22. The ALJ determined at step four that the claimant had the RFC to perform sedentary work in that she "can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, can stand or walk in combination for 2 hours in an 8-hour workday with normal breaks, and can sit for 6 hours in an 8-hour workday with normal breaks." *Id.* at 23. The ALJ also included, "The claimant cannot be exposed to more than moderate noise and may not be exposed to bright lights which is defined as no bright sunlight, stage lighting or strobe lighting." *Id.* Based on this RFC finding, the ALJ determined the claimant is "capable of performing past relevant work as a telecommunications supervisor" and "other jobs that exist in significant numbers in the national economy." ECF# 14, p. 26. Thus, the ALJ found that the plaintiff was not disabled as of the application date.

**ARGUMENT AND ANALYSIS OF EVIDENCE**

The single issue on appeal is that ALJ failed to properly evaluate

her testimony on the frequency and intensity of her migraine headaches. Specifically, the claimant argues the ALJ failed to explain how the claimant's migraine headaches were considered in assessing her testimony and in formulating the RFC.

Evidence of Migraine Headaches

The claimant testified at the hearing in July of 2020 that while she had experienced five or six migraine headaches monthly in July 2019, she was now having 16 to 20 headaches monthly. ECF# 14, p. 107. Some of the migraines last two to three hours and longer making her sick to the stomach and sensitive to light and loud sounds and causing her to stay inside. *Id*. She sees Dr. Jain for the migraines who has continued to treat her with changing medications, including a limited number of break-through medications, that have not decreased the number of her migraines. *Id*. at 108-109. She is unable to do housework or any kind of work when experiencing significant migraines. *Id*. at 109. In her function report, the claimant states that she cares for her baby son but that she relies on her parents for help when she has migraines. ECF# 14, pp. 293-294. She maintains low-stress environments and limits her regular activities outside of home to attending church and only occasional trips to the grocery store and medical visits. *Id.* at 296-97.

A review of the Dr. Jain's dictation notes reveals the following. In August of 2018, the claimant report "quite a bit migraine headaches," and Dr. Jain recorded a diagnosis of "Migraine headache, without aura, intractable, partially responding to treatment" with a plan to increase Topamax and to keep a seizure and headache log. ECF# 14, p. 582. In October of 2018, Dr. Jain recorded that the increased Topamax was a "prophylaxis of migraine headache," that his diagnosis remained the same of intractable migraines partially responding to treatment, and that she should keep taking the increased dosage of Topamax. *Id.* at p. 581. In December of 2018, Dr. Jain recorded that with the increased dosage of Topamax, the claimant's "headache frequency and severity has significantly decreased." *Id*. at 673. His diagnosis was the same as before, and he kept the claimant on the same dosage of Topamax. *Id.* In the January of 2019 visit to her rheumatology clinic, the claimant reported body pain "all over" but that her "headaches are the worse" for which she was being seen by Dr. Jain. ECF# 14, p. 599. In February of 2019, Dr. Jain recorded that the claimant complained "of having increased headache" and that adding Zonisamide every night "did not make any significant difference in decreasing the headache frequency." *Id.* at p. 577. Dr. Jain instructed the claimant to continue taking the Topamax and added a prescription of Maxalt for

"aborting the migraine since . . . Sumatriptan was not effective." *Id.* In June of 2019, Dr. Jain reduced the amount of Topamax prescribed to the claimant and directed her to keep taking the Maxalt. *Id*. at 573. Dr. Jain recorded the same diagnosis of intractable migraines "partially responding to treatment." *Id.*

In July of 2019, Dr. Jain records that the Topamax was reduced with the claimant feeling better. *Id.* at 571. For this month, Dr. Jain recorded a diagnosis of "Migraine headache without aura, intractable, is partially improved." *Id.* Three months later, October of 2019, Dr. Jain writes that despite taking Topiramate as a prophylactic for migraines, "She still has a lot of migraines going on, almost 3-4 times a week." ECF# 14, p. 666. And this month, Dr. Jain records a diagnosis of "Migraine headache without aura is poorly controlled." *Id.* Dr. Jain increased the claimant's prescription for Topamax. *Id.* The next medical record from Dr. Jain is from a visit in March of 2020 describing that in December of 2019 he started the claimant on Amitriptyline, that her "Headaches are less frequent," but that "Headaches are still reported at more than 15-20 migraines per month." *Id*. at 1003. Under the diagnosis section, Dr. Jain recorded, "Migraine headache without aura, intractable, is poorly controlled. Patient cannot take Topamax due to potential side effect of kidney stones." *Id*. He instructed the claimant to

7

continue taking the Amitriptyline but adjusted the times to reduce her morning drowsiness. *Id*. He again advised her on keeping a headache log and offered that he would consider other medications if necessary. *Id.* And Dr. Jain's record from May of 2020 reports that "headache frequency has decreased" with "five headache days" in April and "eight headache days" in May, as the use of Rizatriptan helped. *Id*. at 1007. He recorded a diagnosis of intractable migraine headache "partially controlled." *Id.* He kept her on all current medications and wrote that he would consider an injection like Aimovig. *Id.* The claimant's headache log for May shows she experienced another nine migraine headaches that month after her visit to Dr. Jain. *Id.* at 378.

<u>ALJ's Evaluation of Migraine Symptoms</u>

The ALJ found the claimant's migraine headaches are a severe impairment. ECF# 14, p. 20. At step three, the ALJ noted that the "documented frequency and severity of the claimant's headaches" did not meet a listing level. *Id.* at p. 23. At step four, the ALJ looked to Social Security Rule 16-3p and identified the factors for "assessing the consistency of the claimant's symptoms with the medical evidence," which include objective medical evidence, statements of claimant and others, and other factors including daily living activities; location, duration, frequency and

intensity of symptoms; precipitating and aggravating circumstances; effectiveness of medications in relieving symptoms; other available measures for relieving symptoms; and any other factors bearing on restrictions caused by symptoms. *Id*. at p. 24. With respect to claimant's migraine headaches, the ALJ summarized the claimant's testimony:

> The claimant alleged that she experiences migraine headaches and body pain due to fibromyalgia. At the hearing, the claimant testified that her headaches cause stomach discomfort and that light and sound also worsen her symptoms. The claimant testified that she is not able to complete household chores when experiencing a migraine.

*Id.* In evaluating the claimant's testimony on symptoms, the ALJ first found:

> that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statement's concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id*. And then in discussing the claimant's statements about her headache symptoms, the ALJ noted the following evidence:

> The evidence also shows that the claimant has a history of migraines and seizures. However, treatment notes disclose that medication helps to decrease the frequency of these events. In December 2019, the claimant report that she had no seizures the last month (Exhibit B19F at 3). In March 2020, she reported having one seizure in January and another in February. The provider noted that the claimant was able to move all four extremities and that she exhibited no deficits when walking (Exhibit B19F at 3; B20F at 1). In May 2020, the claimant's neurologist noted her report of fewer headaches with the use of rizatriptan and indicated that the use of Aimovig could also be considered (Exhibit B20F). In April 2020, she noted that she was

helping to home school her nephews who had a lot of work to do (Exhibit B15F at 9).

*Id.* at p. 25. From this, the ALJ concludes:

> The medical evidence of record does not dispute that the claimant has conditions, which singly or in combination, may cause her pain or other difficulties. What the evidence indicates, however, is that the claimant's symptoms may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity. The above residual functional capacity, as determined by the undersigned, gives adequate weight to the facts as determined to be consistent with the evidence.

*Id.* As for medical opinions and findings, the ALJ found the consulting medical opinions persuasive and consistent with the medical evidence but added a restriction on exposure to lighting. *Id.*

The claimant contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not explain and cite substantial evidence to show how the claimant can do sustained work because of her migraine headaches. In its other decisions involving similar contentions, the court summarized the relevant law this way:

> In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. *Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it

> is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. *Spicer v. Barnhart*, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. *Cruse v. U.S. Dept. of Health & Human Services*, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

*Pedraza v. Berryhill*, No. 17-2152-SAC, 2018 WL 6436093, at *2 (D. Kan. Dec. 7, 2018); *Frakes v. Berryhill*, No. 17-2010-SAC, 2018 WL 1184086, at *3 (D. Kan. Mar. 7,2018). Because the ALJ's "credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)(internal quotation marks omitted). Adverse credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*. (internal quotation marks omitted).

As cited and argued by the claimant, SSR16-3P, 2017 WL 5180304, lays out the two-step process for evaluating a claimant's

impairment-related symptoms. The first step is satisfied here in that the ALJ found that the claimant's migraines were a medically determinable impairment that could reasonably be expected to cause the alleged symptoms. ECF# 14, p. 24. The second step evaluates "the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." 2017 WL 5180304, at *4. As this court quoted in *A.B. v. Saul*, No. 20-1114-SAC, 2020 WL 7714408, at *3 (D. Kan. Dec. 29, 2020), SSR 16-3 assures:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

 2017 WL 5180304, at *10.

      The court agrees with the claimant that the ALJ failed to evaluate her statements about the frequency and severity of her migraine headaches. The ALJ recites the regulatory factors for evaluating symptoms but fails to link any of the factors with specific reasons for why the frequency

and severity of the plaintiff's migraine headaches do not disable her from substantial gainful employment. Looking at the claimant's history of migraine headaches, the ALJ made this single ambiguous statement, "that medication helps to decrease the frequency of these events." ECF# 14, p. 25. This conclusory statement does not constitute a specific reason for why the frequency and severity of the claimant's headaches would not disable her. Moreover, the court does not find in Dr. Jain's treatment notes, when considered together, anything showing he had prescribed any medication regime through May 2020 which had consistently and effectively reduced the claimant's headaches to less than weekly. As SSR 16-3P points out, "Important information about symptoms recorded by medical sources . . . may include, . . . A longitudinal record of any treatment and its success or failure, including any side effects of medication." 2017 WL 5180304, at *7. Dr. Jain never recorded a diagnosis that the claimant's headaches were under control with or had fully responded to medication. In fact, at the claimant's visit in March 2020, Dr. Jain wrote that claimant was having "more than 15-20 migraines per month" and that her migraine headaches were "poorly controlled." *Id*. at 1003. Even the treatment notes from May 2020 cited by the ALJ only show that Dr. Jain considered the migraine headaches to be "partially controlled" with the latest medication. *Id*. at

1007. And based on the claimant's headache log from May 2020 and her testimony at the hearing, there is nothing of record to suggest that Dr. Jain's latest prescription had brought the claimant's migraines under control.

After referencing parts of Dr. Jain's treatment note on headache frequency and medication from May 2020, the ALJ followed that sentence with this, "In April 2020, she noted that she was helping to home school her nephews who had a lot of work to do." *Id*. at 25. The context for this quoted statement by the claimant does not sustain a reasonable inference that she was regularly engaged in a level of activity inconsistent with her described symptoms. At a joint counseling session on April 8, 2020, conducted telephonically due to the COVID-19 crisis, the claimant's daughter commented that she was "not doing well" with the crisis and would prefer to be back at school. *Id.* at 702. The written notes then state: "She [daughter] did state that the on line schooling requirements are easier and she is pleased about that. PT [claimant] is helping home school her nephews and reported they have a lot of work to do." *Id.* This statement when placed in its context fails to reveal what level of activity the claimant was admittedly engaged in and on what kind of a regular basis, if any. In short, the reviewing court is being asked to speculate not only as to the effectiveness of Dr. Jain's last prescribed medications, as to the meaning of the claimant's

statement of helping with school at home for her nephews during the COVID crisis, but also as to the explanation for how this evidence shows the frequency and severity of the claimaint's migraine headaches do not disable her. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

Finally, the court cannot find any explanation or specific reason in the opinions of the State agency consultants which the ALJ found persuasive. On October 16, 2019, Dr. Schell opined from his review of the medical records at the initial level that the claimant's "migraines have been noted to have improved with treatment." ECF# 14, p. 173. On December 18, 2019, Dr. Salinas opined from his review of the medical records the very same, that the claimant's "migraines have been noted to have improved with treatment." *Id.* at 185. Neither opinion makes any mention of Dr. Jain's treatment note from October 15, 2019, being that the migraine headache "is poorly controlled." *Id.* at 666. Neither opinion is consistent with the longitudinal record of Dr. Jain's treatment notes. Neither opinion provides an explanation for the ALJ's evaluation of the claimant's described frequency and severity of her migraine headaches as disabling.

Because the ALJ did not follow properly SSR 16-3p in assessing the evidence of the claimant's migraine headaches, the court shall remand this matter for further consideration. *See A.B. v. Saul*, 2020 WL 7714408, at *3. The evidence of record in this case on the claimant's migraine headaches, including the claimant's emphasis in arguments and evidence at the hearing before the ALJ, requires more than the passing and isolated references provided in the ALJ's decision. The court cannot say from the record that the ALJ here "set[ ] forth the specific evidence he relie[d] on in evaluating the claimant's credibility." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). In addition, the ALJ's reasoning and explanation as discussed above lacks the clarity needed for a meaningful review of the decision.

IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) reversing the Commissioner's final decision and remanding this case for further consideration.

Dated this 8th day of October, 2021, Topeka, Kansas.

  /s Sam A. Crow
Sam A. Crow, U.S. District Senior Judge